UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Hollis J. Larson,	Civ. No. 09-3070 (PAM/AJB)

           Plaintiff,

v.	**ORDER**

Terry Carlson, Greg Smith
Lynn Degerstrom, Sarah Tardy,
Sally Nelson, H. Edwards, and
Kim Ebeling,

           Defendants.

---

This matter is before the Court on the Report and Recommendation ("R&R") of Magistrate Judge Arthur J. Boylan dated April 5, 2010. In the R&R, Magistrate Judge Boylan recommends denying Plaintiff's Motion for Default Judgment and granting Defendants' Motion to Dismiss.

The Court must conduct a de novo review of all portions of a Magistrate Judge's R&R to which specific objections are made. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); D. Minn. L. R. 72.2(b). The Court has considered Plaintiff's objections and reviewed the R&R de novo. Based on that review, the Court adopts the R&R's recommendation that the claims in the Complaint be dismissed. The Court disagrees, however, with the R&R's conclusion that the federal claims should be dismissed without prejudice, and thus rejects this portion of the R&R.

**BACKGROUND**

Plaintiff Hollis J. Larson is a former Minnesota Department of Corrections inmate who is now confined at the Minnesota Sex Offender Program ("MSOP") in Moose Lake, Minnesota. In 2005, while an inmate at the Minnesota Corrections Facility ("MCF") in Oak Park Heights, Minnesota, he brought a 42 U.S.C. § 1983 lawsuit contending that officials at MCF-Stillwater violated his constitutional rights during a disciplinary incident at the prison. (D. Minn. Civ. No. 05-2720.) This Court granted the defendants' motion for summary judgment in that case, dismissing Larson's claims against them. Larson appealed, and the Eighth Circuit Court of Appeals summarily affirmed. The Court of Appeals' mandate issued on March 26, 2009.

Larson decided to appeal the Court of Appeals' judgment to the United States Supreme Court, and thus prepared to file a petition for a writ of certiorari. That petition was due to be filed by June 11, 2009. On May 25, 2009, Larson submitted for copying his original petition and other relevant documents to officials at MCF-Rush City, where he was incarcerated at the time. According to the Complaint, the officials refused to make the copies, refused to expedite the copying, and ultimately lost his documents. Larson submitted complaint forms, called "kites," in an attempt to expedite the copying and to find out what happened to his documents; Defendants claimed that they had not received Larson's copy request. On June 11, 2009, Defendants admitted that they had lost Larson's documents and he filed a request for an extension with the Supreme Court that day. He also filed a grievance with the warden, complaining of the mishandling of his copy request.

The Supreme Court rejected his request for an extension. Although Larson ultimately

received new copies of the documents from the Court of Appeals and submitted an untimely petition for a writ of certiorari to the Supreme Court, the Supreme Court rejected the petition as untimely and did not consider the merits. The warden rejected Larson's grievance, finding that Larson had assumed the risk that his documents would be lost by attaching the original documents to his copy request. Larson appealed that denial, but his appeal was rejected pursuant to Department of Corrections policy because Larson had fewer than 40 days left on his sentence. Larson then brought this lawsuit.

The Complaint does not contain separate counts; rather, the legal claims are intertwined within the factual recitation. Larson contends that Defendants were negligent (Compl. ¶ 7) and that their actions also constituted the tort of "interference with constitutional rights under MN law." (Id. ¶ 15.) He also contends that Defendants' handling of his grievance was a conspiracy to make that grievance untimely so that the grievance could not be considered by prison officials. (Id. ¶ 19.) He alleges that the grievance procedure was negligent and, as with the copying claim, contends that Defendants also committed the tort of interference with constitutional rights during the processing of his grievance. (Id. ¶ 24.)

Larson asserts that Defendants' actions in mishandling his copy request and in processing his grievance about the copy request

> constitute violations of, and conspiracy to violate, plaintiff's federal constitutional rights to freedom of expression, etc., under the 1st Amendment to the U.S. Constitution; due process of law and equal protection under the 5th and 14th Amendments to the U.S. Constitution;, [sic] and against unwarranted seizure of property under the 4th Amendment to the U.S. Constitution; and

3

interference with those same federal constitutional rights . . . .

(Id. ¶ 30.) Larson claims that Defendants' actions "resulted in the irreparable harm of plaintiff being denied his fundamental right of being able to petition the country's highest court and having his civil rights action decided by the country's highest court." (Compl. ¶ 32.) He seeks compensatory damages of $10,000 for each of two alleged constitutional deprivations, and punitive damages of $30,000 against each Defendant.

**DISCUSSION**

**A.     Default Judgment**

Larson received permission to proceed in forma pauperis in this matter. As a result, the United States Marshal was ordered to serve the Summons and Complaint. As the Rules provide, the Marshal sent the documents to Defendants by first-class mail on November 30, 2009. Fed. R. Civ. P. 4(e)(1); Minn. R. Civ. P. 4.05. Defendants did not return the acknowledgment of receipt within the 20 days provided by Minn. R. Civ. P. 12.01, but rather filed a Motion to Dismiss the Complaint on February 2, 2010. Defendants also signed the acknowledgment of receipt of service on February 10, 2010. Larson filed a Request for Entry of Default on February 19, 2010, contending that default should be entered because Defendants did not answer the Complaint in the time provided by the Rules.

Larson's objections to this portion of the R&R stem from a misunderstanding of what the service rules require and the effect of a failure to serve a complaint. Under Minnesota law, if the acknowledgment of receipt of service is not returned, service by mail was ineffectual. Turek v. A.S.P. of Moorhead, Inc., 618 N.W.2d 609, 611 (Minn. Ct. App. 2000).

4

"Ineffectual" in this context means without legal effect, or futile. Under Minnesota's Rules, ineffectual service gives rise to the obligation to serve a defendant personally, rather than by mail. Nieszner v. St. Paul Sch. Dist. No. 625, 643 N.W.2d 645, 649 (Minn. Ct. App. 2002). Ineffectual service does not give rise to the right to move for a default judgment against the non-responding party. While Larson may believe that the Marshal should have attempted the personal service required by Defendants' failure to return the acknowledgment of receipt, there can be no doubt that service in this instance was ineffectual. Ineffectual service does not establish cause for a default judgment, and thus Larson's Motion cannot be granted.

More importantly in this case, Larson filed his Request for Entry of Default more than two weeks after Defendants filed their Motion to Dismiss. The Motion to Dismiss constitutes a response to the Complaint, and as such, a default is simply not appropriate. See Minn. R. Civ. P. 12.01. Whether the Motion to Dismiss was an untimely response to the Complaint is a different issue, but the timeliness of the Motion to Dismiss does not provide justification to enter default against the moving Defendants.

**B.    Motion to Dismiss**

    1.    Denial-of-Access Claim

Although not specifically mentioned in the Complaint, Larson asserts that he is attempting to raise claims under 42 U.S.C. §§ 1983 and 1985(2) and (3). In the R&R Magistrate Judge Boylan construed part of Larson's § 1985 claim as a § 1986 neglect-to-

5

prevent claim, and Larson vehemently disagrees with this aspect of the R&R.[1] However, he fails to acknowledge that in adding a § 1986 claim that Larson had not specifically mentioned, the Magistrate Judge was in fact expanding Larson's claims. Moreover, Magistrate Judge Boylan evaluated Larson's § 1985 claims in their entirety, so whether or not the R&R added a claim Larson did not intend to make is of no moment.

As the R&R found, Larson has failed to state a claim for any violation of § 1985. Subsection 2 of § 1985 prohibits conspiracy to interfere with an individual's "attending" court. The R&R correctly noted that filing legal papers is not "attending" court within the meaning of this subsection. Merely because the United States Supreme Court has not made a specific finding on this issue does not mean that the R&R was erroneous in so concluding. In addition, § 1985 requires some allegation of a class-based animus. Larson contends in his objections that he has alleges two different suspect classes affected by Defendants' actions: prison inmates and all United States citizens "that have rights and privileges to non-interference by prison officials in filing documents with the courts and to petition the government." (Obj. at 5.) These are not suspect classes for the purposes of any constitutional analysis, however. A suspect class is a group of people who have been "saddled with such disabilities, or subjected to such a history of purposeful unequal

---

[1] Indeed, Larson vehemently disagrees with many aspects of the R&R. Larson's vehemence at times crosses the line into hyperbole and vitriol. (See Pl.'s Obj. at 7 ("The magistrate again deliberately lies . . . .").) Although the Court understands that Larson feels strongly about his case, in the future he should strive to avoid unwarranted ad hominem attacks on the Magistrate Judge. His inflammatory language detracts from the legitimacy of his claims.

treatment, or relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian political process." San Antonio Indep. Sch. Dist. v. Rodriguez, 411 U.S. 1, 28 (1973). The paradigm suspect class is race. See McLaughlin v. Florida, 379 U.S. 184, 191-92 (1964). No court has held that prisoners comprise a suspect class, and it would defy common sense to hold that all United States citizens are a suspect class. Larson's objections are without merit. The R&R correctly concluded that his § 1985 claims must be dismissed.

Again, Larson's objections in this regard are illogical and based on a fundamental misunderstanding of the nature of a constitutional claim. Larson argues that the Magistrate Judge erred in determining that his claims were all based on his inability to file the petition in the Supreme Court, because, according to Larson, he has in fact raised four separate constitutional claims: "violations of his 1st Amendment right to freedom of expression; violation of his 5th Amendment right to due process; violation of his 14th Amendment right to due process and equal protection; and violation of his 4th Amendment right guarantee against unlawful seizure of his property." (Obj. at 5.) Although Larson's §§ 1983 and 1985 claims may contend that Defendants violated all of these constitutional provisions, his contentions arise out of the same underlying facts: Defendants' mishandling of his copy request. In other words, Larson does not claim that Defendants violated his First Amendment rights by mishandling his copy request (and the subsequent grievance denial), and violated his Fifth Amendment rights by doing something completely different.

Thus, whether brought under the First, Fifth, Fourteenth, or Fourth Amendment,

Larson's claim is that Defendants violated his constitutional rights by denying him access to the courts. Whether couched as a failure-to-train claim or under some other theory, the underlying wrong is Defendants' mishandling of Larson's copy request.

Larson's vehement objection to the R&R's explanation of his denial-of-access contentions is misplaced. Larson argues that the R&R erred in characterizing his claim as a "backward-looking" denial-of-access claim. He asserts that he is raising both a backward-looking and a forward-looking denial of access claim. The allegations of his Complaint do not bear out his assertion, however. A systemic, or forward-looking denial-of-access claim complains of a problem in the system that prohibits an entire class of persons from accessing the courts. As the Supreme Court explained,

> the essence of the [systemic] access claim is that official action is presently denying an opportunity to litigate for a class of potential plaintiffs. The opportunity has not been lost for all time, however, but only in the short term; the object of the denial-of-access suit, and the justification for recognizing that claim, is to place the plaintiff in a position to pursue a separate claim for relief once the frustrating condition has been removed.

Christopher v. Harbury, 536 U.S. 403, 413 (2002). Examples of systemic denial-of-access claims include a claim that high filing fees prevent poor citizens from bringing lawsuits, or a claim that a prison must provide inmates with a law library to allow them to research their legal claims. See id. (citing cases). Larson's claim is not of this type. He does not contend, for instance, that the prison fails to copy all inmates' legal papers. Rather, the essence of his claims is that he alone was the victim of a conspiracy to prevent him from filing his legal papers. This is the essence of a backward-looking denial-of-access claim.

Larson claims that, because of Defendants' actions, he forever lost his opportunity to present his arguments to the Supreme Court. See id. at 414 (characterizing basis of backward-looking claim as "an opportunity already lost."). The R&R concluded that Larson's denial-of-access claim must be dismissed because Larson failed to allege an essential element of that claim, namely a non-frivolous or arguable claim that he would have raised in the petition for certiorari that Defendants prevented him from filing. The R&R therefore recommended dismissal of this claim without prejudice, to allow Larson to replead it. Larson apparently misunderstood this, as he argues that the recommendation to dismiss this claim is "the epitome of hypocrisy, bias, and injustice" (Obj. at 8) because the Magistrate Judge also denied his request for counsel. As the Objections show, Larson has no difficulty articulating his positions, and the R&R recommended that the Court allow him another chance to do that.

Rather than presenting this Court with some sort of argument regarding the claims he would have made in his certiorari petition, however, Larson limits his objections to further ad hominem attacks on the motives of Magistrate Judge Boylan. Having presided over Larson's prior lawsuit and found that lawsuit lacking in merit, this Court determines as a matter of law that Larson has not and cannot raise a non-frivolous or arguable claim in support of his petition for certiorari. Thus, the Court will dismiss with prejudice Larson's claims premised on a denial of access to the courts.

  2. Fourth Amendment Claim

Nor has Larson stated a claim under the Fourth Amendment, which prohibits

9

unreasonable searches and seizures. Defendants did not "seize" Larson's documents; rather, Larson provided those documents to Defendants. It appears that Larson is arguing that Defendants' loss of his documents constitutes an unlawful seizure under the Fourth Amendment. Not every wrong, however, is of constitutional magnitude. See Alexander v. Peffer, 993 F.2d 1348, 1349 (8th Cir. 1993) ("[A]lthough § 1983 provides a citizen with an effective remedy against those abuses of state power that violates [sic] federal law, the constitution does not provide a remedy for abuses that do not violate federal law.") Larson's injury, for the purposes of his Fourth Amendment claim, is the loss of his documents. As the Magistrate Judge determined, this is a state-law conversion claim, plain and simple. It is not a constitutional issue; there is no question of the reasonableness of the seizure balanced against Larson's legitimate interests in his documents. See, e.g., Tennessee v. Garner, 471 U.S. 1, 8 (1985) ("To determine the constitutionality of a seizure we must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion."). Thus, the R&R is correct that Larson failed to state a claim for a violation of his Fourth Amendment rights.

    3.    Due Process Claim

The R&R determined that Larson failed to state a claim for a violation of his due process rights arising out of Defendants' handling of Larson's grievance. Larson once again argues that the Magistrate Judge erred in limiting his due process claim to the grievance procedure, contending that he has raised due process issues in the loss of his legal documents as well as "defendants' imposition of atypical and significant hardship upon plaintiff in

relation to the ordinary incidents of prison life . . . ." (Obj. at 10.) The only example Larson gives of the "hardship" he has allegedly suffered is the loss of his legal documents.

The Court has previously determined that Larson has not stated any claim for a violation of his constitutional rights arising out of the loss of his documents. Larson argues that the loss of his documents, taken together with the alleged mishandling of his grievance, constitute a violation of his due process rights. Again, he misreads the relevant caselaw. First, Defendants' handling of Larson's grievance is essentially immune from constitutional challenge. A correctional facility's grievance procedure "does not give rise to a protected liberty interest requiring the procedural protections envisioned by the fourteenth amendment." Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993). Larson makes much of the statement in Buckley that "defendants' failure to process any of [the inmate's] grievances, without more, is not actionable under section 1983." (Obj. at 10 (quoting Buckley, 997 F.2d at 495) (emphasis in Obj.).) He contends that he has alleged more, specifically that not only did Defendants deny his grievance, but they also lost his documents. The loss of documents is not the "more" that the Buckley court envisioned, however. To raise a due process claim, Larson must allege a constitutionally protected interest that was infringed by Defendants' alleged failure to follow proper procedures. The loss of his documents is simply not a constitutionally protected interest that can establish a due process claim in this context. Larson's due process claim fails.

3. Equal Protection

As noted above, Larson has failed to allege that he is a member of a suspect class.

The classes he puts forward are not suspect classes for the purposes of constitutional analysis, and his objections to this portion of the R&R are utterly without merit.

    4.    <u>Section 1915A</u>

Larson makes the curious objection that his Complaint cannot be dismissed because it survived the pre-screening required by 28 U.S.C. § 1915A. However, at the time he filed the Complaint, Larson was no longer a "prisoner" within the meaning of § 1915A, and thus his Complaint was not subject to § 1915A pre-screening. Rather, the Magistrate Judge examined only Larson's application to proceed in forma pauperis under § 1915, which does not entail examining the merits of the Complaint. (<u>See</u> Order on Application to Proceed Without Prepayment of Fees (Docket No. 5 ) (stating that the Court "considered the Application . . . under § 1915").) Larson's objections on this point are meritless.

    5.    <u>State claims</u>

Having determined that Larson has not sufficiently made out any federal claims, the only claims remaining are state-law claims. Magistrate Judge Boylan recommended dismissing these claims without prejudice, to allow Larson to pursue the claims in state court. Larson does not object to this portion of the R&R,[2] and indeed his memorandum in opposition to the motion to dismiss requested that relief. "When federal claims have dropped

---

[2] Larson purports to leave the door open for further objections, concluding his objections with, "For the reasons stated above non-exclusively . . . ." (Obj. at 11.) This is improper, as the statute clearly provides for Court review of a Magistrate Judge's determination "to which objection is made." 28 U.S.C. § 636(b)(1). Having failed to raise a specific objection to the R&R, Larson cannot now claim that he intended to reserve such objection.

out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction . . . ." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988); see also 28 U.S.C. § 1367(c) (authorizing the Court to decline to exercise supplemental jurisdiction over a state law claim when it "has dismissed all claims over which it has original jurisdiction"). The Court will therefore adopt the R&R's recommendation that Larson's state claims be dismissed without prejudice.

**C.     Motion for Change of Venue**

After the R&R was filed, Larson filed a "Demand/Notice for Common Law Jurisdiction and/or Motion for Change of Venue." Although it is less than clear from the two-page Motion itself, it appears that Larson is challenging the Court's exercise of jurisdiction, claiming that the Court is somehow exercising its "de facto admiralty jurisdiction" rather than common law jurisdiction. He also asks for the removal of the "de facto flag of war of the United States Corporation." This Motion is frivolous; it warrants no further discussion and will be denied.

**CONCLUSION**

Larson's Complaint fails to state a claim on which relief can be granted. As such, it must be dismissed.

Accordingly, **IT IS HEREBY ORDERED that**:

1.    The R&R (Docket No. 23) is **ADOPTED in part**;

2.    Plaintiff's Request for Entry of Default and Default Judgment (Docket No. 17) is **DENIED**;

3. Defendants' Motion to Dismiss (Docket No. 9) is **GRANTED**;

4. Plaintiff's federal claims are **DISMISSED with prejudice**;

5. Plaintiff's state claims are **DISMISSED without prejudice**; and

6. Plaintiff's Demand/Notice for Common Law Jurisdiction and/or Motion for Change of Venue (Docket No. 25) is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date: Tuesday, April 20, 2010

*s/ Paul A. Magnuson*
Paul A. Magnuson
United States District Court Judge